### 10702

#### FLANAGAN v. GLENCOE COTTON MILLS
##### (108 S. E. 156)

APPEAL AND ERROR—WHERE EVIDENCE NOT FULLY DEVELOPED CAUSE WILL BE REMANDED FOR NEW TRIAL.—In an action by the bookkeeper and director of a cotton mill to recover the balance of the bonus voted him with themselves by the directors, after his obligation to the corporation for the share purchased by him should be marked paid, evidence as to the corporate transactions, particularly the ratification of the directors' acts by a stockholders' meeting, *held* insufficient to permit a final judgment, so that the case should be remitted to the trial Court for full showing as to the facts.

Before WILSON, J., Richland, April, 1920. Reversed and new trial ordered.

Action by C. A. Flanagan against Glencoe Cotton Mills. Judgment for plaintiff and defendant appeals.

*Messrs. Nettles & Tobias* and *Weston & Aycock,* for appellant, cite: *Right of directors owning majority of stock to appropriate funds of corporation:* 212 N. Y., 121; 105 N. E., 818; L. R. A., 1915 D., 632. *Director has no right by his own vote to reap a benefit at the expense of the corporation:* 10 A. & E. Enc. Law, 790; 14-a C. J. 92, 142; 137 Fed., 790; 166 Fed., 261; 126 Am. St. Rep., 177.

*To warrant payment to a director there must have been a valid antecedent agreement*: 21 A. & E. Enc. L., 908; 14-a C. J., 142; 3 Cook Corpns. (7th Ed.) 2094; 29 Kan., 311; 44 A. R., 650; 71 Ill., 104; 22 A. R., 89; 76 Pac., 194; 104 'A. S. R., 703; and cases cited: 7 L. R. A., 809; 120 N. Y., 134; 17 A. S. R., 619; 139 Pac., 790. *Directors voting as majority stockholders cannot ratify wrongful acts and bind corporation*: 3 Cook Corpns. (7th Ed.) 2096, 2612; 124 N. E., 453; 10 A. L. R., 363; 67 Atl., 663; 164 Ill., 427; 56 A. S. R., 211; 59 Atl., 767; Morawitz Priv. Corpns., Sec. 529. *Right of corporation to repudiate wrong of directors*: 105 S. C., 536; 39 S. C., 44; 14-a C. J., 144; 68 Atl., 777; 206 N. Y., 7; 51 L. R. A. (N. S.), 113; 82 S. C., 82. *Prosperity of company no reason for improper payments*: 184 N. Y., 152; 76 N. E., 1075. *Nor is the fact that loss fell heavily on those who appropriated the money any excuse*: 83 N. E., 441 (Ind.). *Evil intent of plaintiff not in question*: 60 'S. C., 558. *Failure to answer a letter does not make it competent*: Jones Ev., Sec. 269. *No obligation to pay more than agreed salary*: 36 Pa., 367; 74 Mo. App., 355; 125 N. E., (Ind.), 233; 207 S. W., 838 (Mo.); 164 N. Y., 614; 2 McC., 472. *Rule as to gifts*: 12 R. C. L., 935; Bail. Eq., 141; 20 Cyc., 1192; 67 N. E., 1, (Ill.). *Gift, undelivered, is revocable*: 85 S. E., 721, (Va.); 36 N. W., 794, (Mich.); 64 So., 420, (Miss.); 28 S. C., 353; 20 Cyc., 1213.

*Messrs. Nelson, Gettys & Mullins* and *D. W. Robinson,* for respondent, cite: *Burden on appellant to show prejudice in admission of testimony*: 104 S. C., 16. *Failure to answer letter is admission of its correctness*: 195 Fed., 382; 115 C. C. A., 287. *Bonus*: 83 U. S., 471; 21 L. Ed., 322. *Directors may contract with corporation in good faith*: 3 Thomp Corp., Sec. 4059; 96 U. S., 267; 24 L. Ed., 695. *Power of corporation to pay bonus*: 150 C. C. A., 592; L. R. 40, Ch. Div., (Eng.), 170; 104 U. S., 450;

L. R. 23, Ch. Div., (Eng.), 654; 404 N. Y., Supp. 718; 136 App. Div., (N. Y.), 649; 45 L. R., Ch. Div., (Eng.), 437; 3 A. L. R., 443. *Contracts between corporation and its officers voidable only*: 3 Thomp. Corpns., Secs. 4014, 4061; 109 U. S., 524; 27 L. Ed., 1019. *Acts of majority of stockholders binding on minority*: 6 Fletcher Corp., Sec. 3992, p. 6798; 5 Allen (Mass.) 230; 9 Bush, (Ky.), 576; 123 N. Y., 91; 9 L. R. A., 530; 4 Thomp. Corp., Secs. 4496, 5317; 2 Morawitz Priv. Corp. (2nd Ed.), Sec. 625, 626; 36 L. R. A., (N. S.), 204; 100 Atl., 650. *Payment of bonus may be ratified to bind corporation, those benefited voting*: 36 L. R. A., (N. S.), 199; 60 L. R. A., 742; 187 N. Y., 225; L. R. 12, App. Cas., 589. *Corporation estopped to set up ultra vires*: 1 Cook Corp., (7th Ed.), Sec. 38; 176 U. S., 203; 44 L. Ed., 435; 208 Ill., 544; 4 Thomp. Corp., Secs. 5258, 5269, 5270; 5 Id., Secs. 6015, 6016, 6017, 6018; 103 S. C., 403; 60 L. R. A., (N. S.), 936; 89 S. C., 185-6; 87 S. C., 447; 3 Fletch. Cyc. Corp., Sec. 1526, p. 2588-9; 51 L. R. A., (N. S.), 122; 206 N. Y., 7; 135 N. W., 331, (Mich.); 77 S. W., 1074, (Tenn.); 231 Ill., 594; 1 Cook (7th Ed.), Sec. 39; 78 N. J., 146. *Recovery of money illegally paid can only be for the benefit of those who did not acquiesce in its payment*: 100 Atl, 650-1; 29 L. R. A., 100; 8 L. R. A., (N. S.), 738. *No recovery of money actually paid where it has been ratified by stockholders*: 4 Thomp. Corp., Sec. 4496; 3 Fletch. Cyc. Corp., Sec. 1526; 89 S. C., 185. *Non-suit would have been improper*: 100 S. C., 109. *And could not have been predicated on evidence brought out on cross-examination of plaintiff*: 68 S. C., 10; 26 S. C., 264; 43 S. C., 27; 46 S. C., 546; 42 S. C., 16. *Directed verdict*: 89 S. E., 1036; 105 S. C., 410; 101 S. C., 256; 93 S. C., 541; 66 S. C., 489; 104 S. C., 151; 104 S. C., 415; 104 S. C., 30; 99 S. C., 241. *Doctrine of in pari delicto*: 5 Thomp. Corp., Secs. 6015, 6017; 2 Pom. Eq. (4th Ed.) Secs. 941, 942; 101 S. C., 479.

August 1, 1921.

The opinion of the Court was delivered by MR. JUSTICE FRASER.

This evidence tends to show that the plaintiff was the bookkeeper of the defendant mill. That the mill bought in the stock of one of its deceased stockholders at 50 cents on the dollar and resold it at par to some of the people who were in with the management of the mill. The defendant purchased 25 shares and gave his obligation to the mill for the purchase money. He was then made a director. The mill had not been making money, but it became prosperous and gave by way of bonus to its directors about $40,000. This gift was ordered by the directors. Subsequently a stockholders' meeting was had and the action of the directors was approved. These directors owned a large majority of the stock. The plaintiff was secretary of the board, but he did not send out any notices of a stockholders' meeting. We are left only to presume that the stockholders were duly notified. Plaintiff demanded that his obligation to the corporation be marked paid, and asked for judgment for the balance. Some, if not all, of the directors, who were voted a bonus are said to have returned it; but there is no sufficient proof of it, or of any circumstances that rendered the payment of a bond necessary or proper, or an indorsement of it by the corporation.

It would be manifestly unfair, on this partial and incompetent statement of facts, to make a final judgment. As the record now stands, it appears that the directors voted a bonus to each other, and then resolved themselves into a stockholders' meeting and approved the action. A bonus equal to 40 per cent. of the capital stock was given to the directors, with no explanation, except that they had the money. No authority sustains that. The plaintiff paid out a part of it as Federal taxes; so there should be

a full investigation in order that complete justice may be done.

It is therefore ordered that the judgment appealed from be reversed, that the case be sent back to the Court of Common Pleas for a full showing as to the facts of the case, and an accounting by all who took part in the $40,000 bonus, and that all the directors be made parties hereto.

MR. CHIEF JUSTICE GARY and MR. JUSTICE WATTS concur.

MR. JUSTICE COTHRAN (concurring): Action in Court of Common Pleas, Richland County, instituted April 7, 1920, for a balance of $5,838.42 appearing on the books of the defendant to be due to the plaintiff. The alleged indebtedness of the defendant to the plaintiff arose out of the following transactions: For several years prior to the year 1919, and up to and including the month of November, of that year, the plaintiff was employed by the defendant as bookkeeper; he was also secretary of the corporation; he resigned in November, 1919; at the time his resignation took effect the books of account of the defendant kept by the plaintiff, showed a balance to his credit of $5,838.42, as the plaintiff alleges, on account of plaintiff's salary as bookkeeper and a bonus paid to him by the corporation during the year of 1919 and credited to his salary account. We assume that the plaintiff intended to allege that the bonus was voted to be paid, and not actually paid, but credited as stated. The complaint is in quite skeleton form, and is accompanied by no statement of account, the items of which make up the account, his salary, credits, payments, or the alleged bonus.

The defendant answered, denying any indebtedness to the plaintiff, setting up a counterclaim upon a note for $2,500, executed and delivered by the plaintiff to the defendant on April 23, 1915, with interest at 6 per cent. per annum, payable quarterly, upon which payments had been

made as follows:    October 2, 1916, $250.00; October 9, 1918, $200; and November 2, 1918, $50—and demanding an accounting by the plaintiff by reason of the matter hereinafter set forth.

The facts connected with this controversy, which we understand are admitted without question, are as follows:

The plaintiff entered the employment of the defendant in 1914, and continued as its bookkeeper until some time in November, 1919; the salary began at $100 per month, raised to $125, later to $150, and during the year 1918 it was $300.    Some time in 1915, the exact date is not clear, the corporation bought from the estate of George C. Moseley $10,000 of its own stock at 50 cents on the dollar. This sum was in turn sold by the corporation to the plaintiff (bookkeeper), T. H. Wannamaker, Jr. (a director), R. C. Clayton (a director), and Miss Martin (stenographer), at par; these parties taking $2,500 each, and giving their notes severally therefor to the corporation.    The plaintiff testified:

"And the dividends and special bonuses were credited on the stock [we assume he intended to say 'the note,], and the last bonus in the early fall of 1919, of $900, which was the balance I owed, I was instructed to charge off."

On the 16th of January, 1919, possibly about the peak of industrial prosperity, succeeding a period of unexampled flood tide in manufacturing profits, the directors of the corporation, including T. H. Wannamaker, president, T. H. Wannamaker, Jr., vice president, R. C. Clayton, and the plaintiff, who had been elected a director shortly after his acquisition of the 25 shares, held a meeting, at which, as the minutes show:

"It was decided to call a meeting of the stockholders for the purpose of determining what bonus shall be appropriated to the several officers of the mill."

The reason for this action, if it can be so denominated, was thus expressed in the minutes:

26—s. c. 116

"In view of the large profits of 1918, and because of the fact that all of the officers had been working on moderate salaries previous to this time, it was felt that they were entitled to a liberal share of the profits under these abnormal conditions."

Accordingly a meeting of the stockholders was held on January 23, 1919, at which the only stockholders present were the two Wannamakers, Clayton, and the plaintiff; the elder Wannamaker voting the stock of Miss Martin by proxy. The plaintiff testified that as secretary he did not send out to the stockholders notice of this meeting; that Wannamaker usually did this, but he did not know whether he did so on this occasion or not. At any rate, no stockholder was present except those who were interested in the proposition to vote bonuses to the officers. It does not appear that any resolution was adopted, or even proposed; the minutes simply containing this memorandum:

"The directors were authorized to pay the following bonus to the several officers of the mill for the year 1918:

| | |
|---|---|
| T. H. Wannamaker | $15,000.00 |
| T. H. Wannamaker, Jr. | 10,000.00 |
| R. C. Clayton | 7,500.00 |
| C. A. Flanagan | 7,500.00 |

"There being no further business the meeting adjourned."

It appeared that the plaintiff was admittedly entitled to certain credits upon the $2,500 note given by him to the corporation for the 25 shares of stock; the dates and the amounts of said credits are set out in the answer and have been repeated in the foregoing statement. The amount which would have been due upon this note, after deducting the above admitted credits, has been liquidated by the allowance of certain bonuses to the plaintiff, which, how-

ever, appear to have been entered upon his account as
credits upon the verbal direction of the president, without
corporate action in reference thereto.

The amount of the bonus which the stockholders' meet-
ing of January 23, 1919, authorized the directors to allow
to the plaintiff, $7,500, was not actually paid, but passed
as a credit to the plaintiff's salary account.   Of it the plain-
tiff charged himself with certain items for income tax, paint,
coal, and "perhaps other items," amounting to $1,661.58,
which he drew out, leaving a claimed balance in favor of
the plaintiff of $5,838.42, all of which is bonus money.
This is the foundation of his claim.

The defendant's motion, severally, for nonsuit, directed
verdict on the plaintiff's claim, and directed verdict on the
defendant's counterclaim were refused by the Circuit
Judge.   The case was submitted to the jury which ren-
dered a verdict in favor of the plaintiff for the full amount
sued for.   The defendant appeals.

The entire balance claimed by the plaintiff is necessarily
a part of the $7,500 bonus allowed to him by the action
of the directors and stockholders in the meeting of Janu-
ary 16, 1919, and January 23, 1919.   It is apparent, there-
fore, that he plaintiff's alleged cause of action depends
upon the validity of that action and upon the further ques-
tion, assuming that such action was so far valid as to
prevent the recovery of the money by the corporation in
case it had actually been paid, whether, not having been
actually paid, such action constitutes the basis of an action
in favor of the plaintiff against the corporation.

Upon the first question suggested, the validity of the bonus
allowance to the plaintiff: Two most salutary principles
of corporate management are in obstruction:   (1)   The
corporate assets belong to the stockholders;  (2) the di-
rectors of a corporation are trustees for the stockholders.
While the minutes of the directors' meeting of January

16, 1919, do not show a formal resolution of the board appropriating the bonuses, they do show a decision by the board that such action should be taken, and that for the purpose of a show of legality a stockholders', meeting be called, no date being fixed, to determine the amount of the allowances. At that meeting on January 23, 1919, to which it does not appear that any stockholder other than the participants were invited, formal action appears to have been taken fixing the amount of allowances. The The stockholders attending that meeting were the same who, as directors, had come to a decision on the 16th. Their action upon its face as stockholders was nothing more or less than their action as directors.

Considered as the action of the board of directors, the allowances were for services already performed and to the men selected as trustees of the corporation, and upon both grounds were without consideration and void. The attempted action of the stockholders' meeting was that of a majority of the stockholders, consisting alone of those who were the beneficiaries of the allowances. Majority stockholders cannot for selfish purposes act in hostility to the interests of the corporation, with the effect of defrauding non-assenting stockholders.

Even if it should be conceded that the stockholders had the power to vote this bonus, the circumstances under which that action was taken were not such as to receive the sanction of this Court. The directors met, and without taking any formal action upon the matter, in which every one of them was personally interested, "decided" to call a stockholders' meeting to determine what bonus should be appropriated to the several officers of the mill, as if they had already "decided" the main question, and desired the action of the stockholders only in fixing the size of the melon that was to be cut. They took pains to spread upon the minutes the reason for allowing the bonus, "the large profits of 1918," "moderate salaries," and "profits under these

abnormal conditions." The stockholders whose money was being appropriated to this generous purpose, and who had passed through the lean and hungry years since 1910 without dividends, were not consulted; it was not deemed necessary, we apprehend, to give them notice, as those who were to participate in the bonus had control of the corporation. The profits, abnormal though they may have been, belonged to the stockholders, and it seems only fair that, when their property to the extent of $40,000, 40 per cent. of the capital stock, was to be donated, they were entitled at least to be consulted.

A further consideration is conclusive of the issue in the case. The bonus was a gift, in violation of the trust imposed upon the directors, either in their capacity of directors or in the swift change to the stockholders; it was never paid, and at best amounts to no more than a promise to pay. Being without consideration and void, it cannot form the basis of an executory contract. *Pitts v. Mangum,* 2 Bailey, 588; *Bennett v. Cook,* 28 S. C., 353; 6 S. E., 28.

The judgment of this Court should be that the judgment of the Circuit Court be reversed; that the case be remanded to that Court for a new trial; that upon said new trial the defendant be allowed judgment against the plaintiff for the amount due on the $2,500 note, less the credits admitted in the complaint; that the defendant be allowed, if so advised, to amend its answer, setting up an additional counterclaim for the $1,661.58 admitted by the plaintiff to have been received out of the $7,500 bonus.